HOOD, Judge
(dissenting).
I do not feel that defendant Allstate should be condemned to pay penalties and attorney’s fees in this case.
The evidence shows that defendants have always admitted liability, and that from the time they were first notified of the accident they have been ready and willing to pay the compensation which was due. Their only concern was in determining the persons to whom the payments should be made. I think defendants were extremely diligent and aggressive in their attempts to find out who the surviving dependents of the decedent were in order that payments could be started. The only reason why compensation payments were not started much earlier was because plaintiff and her counsel consistently refused to give defendant the facts which it had to have before it could safely make any payments.
Plaintiff employed an attorney within four days after the accident occurred, and she has never suggested that she was compelled to do so because of anything the defendants did. A formal demand was made on the decedent’s employer three days after counsel had been engaged by plaintiff. On the same day that demand was made the employer’s insurer, Allstate, attempted to contact plaintiff to obtain information as to her marital status and as to the names of Dauzat’s dependents, in order that compensation payments could be made. It succeeded in reaching her the next day, but plaintiff refused to give the information requested, referring defendant to her attorney. Her attorney refused to allow defendant’s agents or attorneys to talk to the claimant, and in spite of the fact that Allstate’s agents contacted the attorney on numerous occasions during the next few weeks, almost daily during a part of that time, demanding information as to the decedent’s marital status and dependents, plaintiff’s attorney failed or refused to provide any such information until September 10, 1968, or 45 days after the accident occurred. On that date plaintiff’s counsel furnished defendant with only a part of the needed facts, consisting of photocopies of birth certificates of the three children who allegedly were issue of her marriage to the decedent.
The defendant insurer had information that the decedent Dauzat had been married three times, and that he had had at least one child by a former marriage. It wanted, and was entitled to obtain, information as to the names of all the children which the decedent had had by former marriages, and whether they were dependent on him for support at the time of his death. Defendant also had been unable to determine whether either of the decedent’s first two marriages had been dissolved before he married the plaintiff in the instant suit. It clearly was entitled to that information, since it had a direct bearing on the question of whether he was legally married to plaintiff when he died.
Defendant also had been informed that plaintiff, Mrs. Dauzat, had been married prior to her marriage to the decedent, and it had no proof that her prior marriage had ever been dissolved. They asked for this information, and I think they were entitled to have it.
After repeated demands made by defendant on plaintiff’s counsel, the latter fur *773 nished defendant with (1) a photocopy the marriage license, evidencing the marriage of plaintiff to decedent in 1951, and (2) a typed, unsigned statement to the effect that Mrs. Dauzat had been married to William Castleberry, “from whom she was divorced in Rapides Parish, Louisiana, around 1947,” and that two children had been born of that marriage. The names of the two children were given. With reference to the decedent’s marital status, the statement recites: of
“Omar Dauzat was married three times, first unto Thelma Barton and of that marriage one son was born namely Donald S. Dauzat. Secondly, Omar Dauzat was married to Lizzie Wiley Morton in 1947. Thirdly, he was married to Betty Zimmerman Castleberry Dauzat.”
This statement was furnished to defendants on September 27, 1968, that being 62 days after the accident occurred, and long after the information was first requested by defendants.
Upon receiving this statement, defendant’s agents promptly checked the records of Rapides Parish and found that in the divorce suit between plaintiff and her first husband, Castleberry, only one child was listed as being issue of that marriage, whereas the statement which had just been furnished to defendant showed two children. A question arose as to whether this second child was actually the issue of her union with Dauzat, and defendant felt that more information was needed as to that child since that person was not listed as a dependent in the petition. Also, the information furnished in that statement failed to show whether the first and second marriages of the decedent had been dissolved before his third marriage to plaintiff, and whether his son by a prior marriage was a’ dependent. They again demanded this information, and plaintiff failed or refused to provide it. And, finally, although plaintiff alleges that the three children named in the petition were dependent on the decedent at the time of his death, a W-4 form (required by Internal Revenue Service) executed by the decedent shortly before his death showed that he claimed a total of only two dependents, including his wife, indicating that only one child was dependent on him at the time of his death.
Suit was filed by plaintiff against defendant on October 10, 1968. This was 75 days after the accident had occurred, and only a few days after the unsigned statement had been furnished providing a part of the marital status and dependency information which defendants needed. Since defendant was unable to get the rest of the information it needed from plaintiff or her attorney, it resorted to discovery procedures to get it. The discovery deposition of Mrs. Dauzat was taken on December 9, and it was only by that procedure that defendant was able to obtain enough information about the decedent’s marital status and dependents to enable it to pay compensation benefits. The payment of such benefits was begun shortly after that deposition was taken.
As I have already noted, defendants have never denied liability for compensation benefits. They were persistent in their efforts to find out the persons to whom the payments should be made, and I am convinced that they were in good faith.
The majority concedes that plaintiff’s counsel “declined to allow Allstate to interview his client,” that he “was not overly enthusiastic about cooperating with Allstate,” and that plaintiff never furnished defendant with the vital information which it needed and had been demanding until she was compelled to do so by defendant’s resort to the discovery procedure. They brush all of that aside, however, and hold that the insurer was arbitrary, capricious, and without probable cause because of other “varied sources of information available to defendants,” and because it was “fairly obvious * * * that these children were married or over 21 years of age and not living with or dependent on Omar Dauzat.”
*774 The majority observes that the insurer “did not seriously and in good faith turn the file over to him (its attorney) for defense,” but that it did so “merely to secure delay from plaintiff’s attorney.” It is true that the file was not turned over to the attorney for the purpose of resisting payment or defeating the claim, because the company has always been ready and willing to pay compensation benefits. It merely sought to defer further action in the pending suit until it could obtain from plaintiff the facts which it had to have before payment could be made.
LSA-R.S. 22:658 provides for the payment of penalties and attorney’s fees only in cases where the refusal or failure of the insurer to pay within the prescribed time is arbitrary, capricious, or without probable cause. Being penal in nature, the statute is not favored, and it must be strictly construed. Home Insurance Company v. A. J. Warehouse, Inc., 210 So.2d 544 (La.App. 4 Cir. 1968) ; Ranzino v. Allstate Insurance Company, 210 So.2d 907 (La.App. 1 Cir. 1968).
I am unable to, agree with my colleagues that in this case the defendant insurer was arbitrary, capricious, or without probable cause in delaying the payment of compensation benefits until it could determine the names of the people to whom such payments should be made. I think it violates the purpose and express provisions of LSA-R.S. 22:658 to require defendant to pay these penalties to plaintiff, when defendant has actively and persistently tried to make the payments and has been handicapped and delayed solely by plaintiff’s refusal to provide it with the information which it needed.
For these reasons, I respectfully dissent.